## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Donald Wayne Holmes,**
**Petitioner Below, Petitioner**

**FILED**

April 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 12-0323** (Harrison County 10-C-474)

**David Ballard, Warden, Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Holmes's appeal, filed by counsel Scott S. Radman, arises from the Circuit Court of Harrison County, wherein petitioner's petition for writ of habeas corpus was denied by order entered on February 14, 2012. Respondent Ballard, by counsel Scott E. Johnson, filed a response in support of the circuit court's decision.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial in May of 2009, petitioner was convicted of four counts of second degree sexual assault and one count of abduction. The State subsequently filed an information for recidivism, based on petitioner's prior felony convictions, and a separate jury found that petitioner was the same person who was convicted of the named prior felonies. At sentencing, the circuit court enhanced petitioner's sentence in accordance with the recidivist statute and sentenced petitioner to life in prison for his first count of sexual assault, ten to twenty-five years in prison for his second count of sexual assault to run consecutively to his life sentence, ten to twenty-five years for the third count of sexual assault to run concurrently to his sentence from count two, ten to twenty-five years in prison to run concurrently to the sentence from count three, and three to ten years in prison to run consecutively with the terms of imprisonment imposed in counts two through four. Petitioner's direct appeal of his convictions was refused by this Court in 2010. Petitioner subsequently petitioned for writ of habeas corpus in circuit court. Following an omnibus evidentiary hearing on this petition, the circuit court entered its thirty-seven-page order denying petitioner habeas corpus relief. In the petition below, petitioner raised several different arguments. On appeal, however, petitioner argues only one assignment of error that his trial counsel was ineffective.

Petitioner Holmes argues that the circuit court erred in finding that his trial counsel did not provide ineffective assistance of counsel because his trial counsel failed to hire an investigator and failed to adequately investigate the case prior to trial. In support, petitioner argues that his trial counsel's lack of pre-trial preparation prejudiced the outcome of his

1

proceedings. In response, Respondent Warden Ballard argues that the circuit court properly found that petitioner did not meet his burden to prove ineffective assistance of counsel. Respondent argues that trial counsel testified at the omnibus evidentiary hearing that he did not find some of the witnesses' statements helpful for trial. Moreover, respondent asserts that petitioner has failed to show what effect, if any, other statements by the State's witnesses would have had on petitioner's trial.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

The following standard is applied to claims concerning ineffective assistance of counsel:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Our review of the record uncovers no error by the circuit court in denying habeas corpus relief to petitioner based on his argument concerning ineffective assistance of counsel. The circuit court's order reflects its thorough analysis of the performance by petitioner's trial counsel. Having reviewed the circuit court's "Final Order Denying Petitioner's Amended Petition for Writ of Habeas Corpus Following Omnibus Hearing" entered on February 14, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignment of error raised in this appeal.[1] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.[2]

For the foregoing reasons, we affirm.

---

[1] The circuit court addressed petitioner's arguments concerning ineffective assistance of counsel on pages eighteen through twenty-three and twenty-five through twenty-six of its order denying habeas corpus relief.

[2] Because this case involves sensitive facts, we have redacted the circuit court order to protect the victim's identification, using only initials to reference her and her family members. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

Affirmed.

**ISSUED:  April 16, 2013**

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

# IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA,
EX REL. DONALD WAYNE HOLMES,

Petitioner,

v.

Civil Action No. 10-C-474-2
Thomas A. Bedell, Judge

WILLIAM S. HAINES, Warden,
MOUNT OLIVE CORRECTIONAL COMPLEX,

Respondent.

## FINAL ORDER DENYING PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS FOLLOWING OMNIBUS HEARING

Presently pending before the Court is a "Petition for Writ of Habeas Corpus," which Mr. Donald Wayne Holmes ("Petitioner"), acting *pro se*, filed pursuant to W. Va. Code § 53-4A-1 on October 14, 2010. On October 20, 2010, the Court entered the "Order Filing Habeas Corpus Petition, Providing Briefing Schedule, and Appointing Counsel" and appointed Mr. Scott Radman, Esq., as counsel for the Petitioner. Accordingly, Mr. Radman filed the Petitioner's "Memorandum of Law in Support of Donald Wayne Holmes' Petition for Writ of Habeas Corpus" on May 4, 2011.[1] Subsequently, the Respondent, through Susan P. Morris, Esq., Assistant Prosecuting Attorney for Harrison County, West, Virginia, filed the "Respondent's Memorandum of Law and Fact to Petition for Writ of Habeas Corpus" on August 23, 2011.

---

[1] The Petitioner never, in fact, submitted a document entitled <u>Amended</u> Petition for Writ of Habeas Corpus. Instead, he filed a second Petition on May 4, 2011, alongside a Memorandum in Support of that Petition, by and through his counsel of record, Scott Radman. The Court will refer to this second petition as the "Amended" Petition for the sake of simplicity.

In order to fully conform to the principles announced in *Losh v. McKenzie*[2], the Court ordered the Petitioner to file a "Checklist of Grounds for Post-Conviction Habeas Corpus Relief" ("*Losh* Checklist") on September 28, 2011. The Petitioner filed such motion on September 28, 2011.

On October 27, 2011, the Petitioner appeared before this court via videoconferencing by and through his Counsel, Mr. Radman, who appeared in person. Came also the Respondent, Mr. William S. Haines, Warden, Mount Olive Correctional Complex, not in person but by and through Ms. Morris. The parties appeared pursuant to an "Order Setting Omnibus Hearing," which was entered by this Court on August 31, 2011.

Whereupon, at the commencement of the proceedings, the Court explained to the Petitioner the purpose of *Losh v. McKenzie*. It inquired of the Petitioner if he had reviewed the *Losh* Checklist with his attorney. The Court further explained and advised the Petitioner that, if any ground of the *Losh* checklist was not raised in that initial proceeding, the ground would be deemed permanently waived. The Petitioner indicated that he understood.

Thereafter, the Court reviewed the grounds of the *Losh* Checklist with the Petitioner and the Petitioner advised aloud, upon the record, the grounds to be raised and waived. Thereupon, counsel for the Petitioner presented sworn testimony of the Petitioner, himself, in support of the Petition and Amended Omnibus Petition for a Writ of Habeas Corpus. After that, counsel for the Respondent offered the sworn testimony of Mr. Perry B. Jones, trial counsel of record for the Petitioner. After the Omnibus hearing, the Court instructed counsel for both parties to submit their proposed findings of fact and conclusions of law. Counsel for the Petitioner did so on December 16, 2011. Counsel for the Respondent followed suit on January 18, 2012.

---

[2] *Losh v. McKenzie*, 166 W. Va. 762 (W. Va. 1981)

After reviewing the pending petition and response, hearing testimony in the Omnibus hearing, reviewing each party's proposed findings of fact and conclusions of law, conducting a thorough examination of the record of the felony case[3] and the current case, and consulting pertinent legal authority, the Court concludes that the Petitioner is not entitled to a writ of habeas corpus.

Accordingly, the Court hereby **ORDERS** that the petition be **DENIED**.

## Findings of Fact

1. On July 25, 2008, the Petitioner was arrested for the felony offenses of Abduction and four counts of Sexual Assault in the Second Degree.

2. Shortly thereafter, the Petitioner was arraigned by Magistrate Warren Davis. The Petitioner's bond was set at $250,000 cash/surety.

3. Thereafter, Mr. Rocco Mazzei was appointed counsel for the Petitioner.

4. The Petitioner was indicted in the January 2009 term of Court for four counts of Second Degree Sexual Assault and one count of Abduction.

5. A Harrison County grand jury returned a five count indictment against the Petitioner, including:

    a) one felony count of Abduction, and

    b) four felony counts of First Degree Sexual Assault.

6. The Petitioner subsequently had difficulties working with his attorney. At his arraignment, he requested that Mr. Mazzei and his investigator, Mr. VanHorn, be substituted.

---

[3] The Court hereby incorporates by reference the underlying felony case record, described and stored as Harrison County Circuit Court Felony Number 09-F-20-2.

7. He also asserted his right to a speedy trial at his arraignment. Trial was scheduled for the week of April 6, 2009.

8. This Court subsequently appointed Perry B. Jones, Esq., to represent the Petitioner.

9. During the first week of April, 2009, the Petitioner's request for a continuance of the trial previously scheduled herein was granted. The Petitioner was advised by the Court of such right, and he knowingly and voluntarily waived his right to a speedy trial. Trial was rescheduled for the week of May 26, 2009.

10. On April 1, 2009, the Court further denied the Petitioner's motion to reduce bond. It did so upon a finding that the Petitioner's circumstances had not changed with regard to bond.

11. On May 26, the Petitioner's case proceeded to a jury trial before the Honorable Thomas A. Bedell, Circuit Court - Division II, in Harrison County, West Virginia.

12. At trial, the crux of the Petitioner's defense was that sexual intercourse between himself and the victim was consensual. He presented no witnesses other than himself.

13. The jury found the Petitioner guilty of all counts returned in the indictment.

14. The Petitioner's post-trial motion to set aside the verdict and grant a new trial was denied by the Court via Order dated October 29, 2009.

15. The Court, acting *sua sponte*, ordered the Harrison County Probation Office to prepare a presentence investigation report to assist with sentencing.

16. On August 7, 2009, the State, pursuant to W. Va. Code § 61-11-19, filed a recidivist information that charged the Petitioner with being a repeated and habitual offender.

17. A jury trial commenced upon the recidivist information on September 29, 2009.

18. At that trial's conclusion, the jury found that the Petitioner Donald Wayne Holmes was the same person who was convicted in Felony Indictment No. 09-F-20-2 and the same person who was previously convicted and sentenced for the felony offense of Unlawful Wounding in the Circuit Court of Harrison County in Felony Case No. 96-F-15-1. Those convictions had not been reversed or set aside. The jury also found that the Petitioner was the same person who was convicted and sentenced for the felony offense of Unlawful Assault in the Circuit Court of Harrison County in Felony Case No. 10-F-86-2. That conviction had also not been reversed or set aside.

19. With all the necessary information before it, the Court conducted a sentencing hearing on December 21, 2009. After careful consideration of the presentencing report, the report from the W. V. Division of Corrections Diagnostic Unit, the facts presented during trial, the arguments presented by counsel, and the jury findings on the recidivist information, the Petitioner was sentenced as follows:

   a) **Count One (Second Degree Sexual Assault):** Life imprisonment to commence on July 25, 2008, thereby giving the Petitioner credit for time served;

   b) **Count Two (Second Degree Sexual Assault):** Not less than ten nor more than twenty-five years of incarceration to run consecutively to the sentence imposed in Count One;

   c) **Count Three (Second Degree Sexual Assault):** Not less than ten nor more than twenty-five years of incarceration to run concurrently to the sentence imposed in Count Two;

d) **Count Four (Second Degree Sexual Assault):** Not less than ten nor more than twenty-five years of incarceration to run concurrently to the sentence imposed in Counts Two and Three; and

e) **Count Five (Abduction):** Not less than three nor more than ten years to run consecutively with the terms of imprisonment imposed in Counts Two, Three, and Four.

20. After being sentenced, the Petitioner filed a Petition for Appeal to the West Virginia Supreme Court of Appeals through his trial counsel, Mr. Perry Jones.

21. By Order dated June 22, 2010, the West Virginia Supreme Court of Appeals refused the Petitioner's appeal.

22. On October 14, 2011, the Petitioner filed a Writ of Habeas Corpus and alleged the following rounds for consideration therein:

   (1) Ineffective assistance of counsel,

   (2) Prosecutorial misconduct and police misconduct,

   (3) Excessive bail, and

   (4) Unfair jury pool.

23. On May 4, 2011, Mr. Radman, then representing the Petitioner in lieu of Mr. Jones, filed a "Memorandum of Law in Support of Petitioner's Petition for Writ of Habeas Corpus." That submission asserted the following grounds for consideration:

   (1) Ineffective assistance of counsel,

   (2) Denial of right to a speedy trial,

   (3) Excessiveness or denial of bail,

   (4) Excessive sentence,

(5) Consecutive sentence for same transaction,

(6) Sufficiency of evidence,

(7) Refusal to subpoena witnesses,

(8) Suppression of helpful evidence by the prosecutor, and

(9) State's knowing use of perjured testimony.

24. On October 27, 2011, at the Omnibus hearing held regarding this matter, the Petitioner asserted nine grounds in support of his petition, including:

(1) Ineffective assistance of counsel,

(2) Denial of right to a speedy trial,

(3) Excessiveness or denial of bail,

(4) Excessive sentence,

(5) Consecutive sentence for same transaction,

(6) Sufficiency of evidence,

(7) Refusal to subpoena witnesses,

(8) Suppression of helpful evidence by the prosecutor, and

(9) State's knowing use of perjured testimony.

25. When the Petitioner subsequently filed his *Losh* Checklist, the grounds asserted therein were the same as those asserted at the Omnibus hearing.

26. In a similar vein, the grounds waived at the Omnibus hearing were commiserate with those waived *Losh* Checklist pursuant to *Losh v. McKenzie*, 166 W. Va. 762 (W. Va. 1981). The grounds waived by the Petitioner included:

(1) Trial count lacked jurisdiction;

(2) Statute under which conviction obtained is unconstitutional;

(3) Indictment shows on its face that no offense was committed;

(4) Prejudicial pre-trial publicity;

(5) Involuntary guilty plea;

(6) Mental competency at time of crime;

(7) Mental competency at time of trial cognizable even if not asserted at proper time or if resolution inadequate;

(8) Incapacity to stand trial due to drug use;

(9) Language barrier to understanding the proceedings;

(10)     Denial of counsel;

(11)     Unintelligent waiver of counsel;

(12)     Failure of counsel to take an appeal;

(13)     Coerced confessions;

(14)     Falsification of a transcript by prosecutor;

(15)     Unfulfilled plea bargains;

(16)     Information in pre-sentence report erroneous;

(17)     Double jeopardy;

(18)     Irregularities in arrest;

(19)     No preliminary hearing;

(20)     Illegal detention prior to arraignment;

(21)     Irregularities or errors in arraignment;

(22)     Challenges to the composition of grand jury or its procedures;

(23)     Failure to provide copy of indictment to defendant;

(24)     Defects in indictment;

(25)     Improper venue;

(26)     Pre-trial delays;

(27)     Refusal of continuance;

(28)     Prejudicial joinder of defendants;

(29)     Lack of full public hearing;

(30)     Non-disclosure of grand jury minutes;

(31)     Refusal to turn over witness notes after witness has testified;

(32)     Claim of incompetence at time of offense, as opposed to time of trial;

(33)     Claims concerning use of informers to convict;

(34)     Constitutional errors in evidentiary rulings;

(35)     Instructions to the jury;

(36)     Claims of prejudicial statements by trial judge;

(37)     Claims of prejudicial by prosecutor;

(38)     Acquittal of co-defendant on same charge;

(39)     Defendant's absence from part of proceedings;

(40)     Improper communications between prosecutor or witness and jury;

(41)     Question of actual guilt upon an acceptable guilty plea;

(42)     Severer sentence than expected;

(43)     Mistaken advice of counsel as to parole or probation eligibility; and

(44)     Amount of time served on sentence, credit for time served.

27. At the conclusion of the Omnibus hearing, the Court ordered both parties to file proposed findings of fact and conclusions of law.

## CONCLUSIONS OF LAW

1. The applicable statutes for the issuance of a writ of habeas corpus are W. Va. Code § 53-4A-1, et seq.

2. As stated herein, the Petitioner alleges a multitude of grounds for which he should be granted a writ of habeas corpus. "A habeas corpus petitioner is entitled to careful consideration of his grounds for relief, and the Court before which the writ is made returnable has a duty to provide whatever facilities and procedures are necessary to afford the petitioner an adequate opportunity to demonstrate his entitlement to relief." *Gibson v. Dale*, 173 W. Va. 681 (W. Va. 1984.)

3. "[T]he burden of proof rests on the petitioner to rebut the presumption that he intelligently and knowingly waived any contention for relief which he could have advanced on direct appeal." *Losh v. McKenzie*, 166 W. Va. 762 (W. Va. 1981).

4. "Waiver" is intentional relinquishment or abandonment of known right; when there has been such knowing waiver, there is no error and inquiry as to effect of deviation from rule of law need not be determined. *State v. Crabtree*, Syl. Pt. 20, 198 W. Va. 620 (W. Va. 1996).

5. The "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." *State ex rel. Scott v. Boyles*, Syl. Pt. 1, 150 W. Va. 453 (W. Va. 1966).

6. Ultimately, it should be remembered that "post-conviction proceedings are not a venue for a petitioner to retry his case under different theories than those advanced at trial." *State ex rel. Richey v. Hill*, 216 W. Va. 155, 165 (W. Va. 2004); citing *United*

*States ex rel. Darcy v. Handy*, 97 F.Supp 930, 939 (M.D.Pa. 1951), rev'd on other grounds.

### Denial of Right to a Speedy Trial
### Losh *Checklist No. 05*

7. A "Sixth Amendment speedy trial right begins with actual arrest of defendant or where formal charges have been brought by way of indictment or information." *State v. Drachman*, 178 W.Va. 207 (W. Va. 1987), citing U.S. Const. amend. VI.

8. "The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and Federal Constitutions." *State v. Vanhoose*, 227 W.Va. 37 (W. Va. 2010).

9. However, the Defendant can waive that right through his own conduct, such as procuring continuances. See *Id.*; *State v. Vanhoose*, 227 W.Va. 37 (W. Va. 2010).

10. In fact, the Defendant cannot successfully assert violation of his constitutional right to speedy trial when any delay, such as continuance on his motion, is attributable to him. *Adkins v. Leverette*, 164 W.Va. 377 (W. Va. 1980).

11. During the first week of April, 2009, the Petitioner's request for a continuance of the trial previously scheduled herein was granted.

12. The Defendant made the request for continuance knowingly, intelligently, and voluntarily.

13. Pursuant to *Adkins*, the Defendant waived his right to a speedy trial. Ergo, this ground lacks merit.

**and[4]**

Excessive Sentence
**Losh *Checklist No. 51***

14. "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *State v. Goodnight*, Syl. Pt. 4, 169 W. Va. 366 (W. Va. 1982).

15. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense." Syllabus Point 1, *State v. Gill*, 187 W.Va. 136, (W. Va. 1992).

16. Claims that double jeopardy has been violated based on multiple punishments imposed after a single trial are resolved by determining legislative intent as to punishment. See *State v. Gill*, 187 W. Va. 136 (W. Va. 1992).

17. The factors to be considered in determining whether a kidnapping or abduction charge occurred in addition to the sexual assault or were merely incidental to the other crime are:

    a) the length of time the victim was held or moved,

    b) the distance the victim was forced to move,

---

[4] Because Petitioner's contentions that his sentence was excessive and that he was unduly convicted of multiple counts of sexual assault and abduction are predicated on similar arguments and points of law, the Court will address the Petitioner's "Consecutive Sentences for the Same Transaction" ground and his "Excessive Sentence" ground together.

c) location and environment of the place the victim was detained, and

d) the exposure of the victim to an increased risk of harm.

*State v. Miller*, Syl. Pt. 2, in part, 175 W. Va. 616 (W. Va. 1985).

18. Our Supreme Court has not hesitated to sustain convictions of abduction and second degree sexual assault that "might arguably have arisen from 'same transaction'" and found that they did not constitute the same offense for the purposes of double jeopardy. See *State v. Trail* 174 W.Va. 656 (W. Va. 1985).

19. "The determination of whether an episode of unlawful sexual behavior constitutes a single offense or multiple offenses necessarily involves a consideration of a number of factors, including the nature of the acts, the interval of time between them and the place or places at which they are committed, among other things." *State v. Davis*, 180 W. Va. 357 (W. Va. 1988).

20. "If defendant commits separate acts of statutorily defined 'sexual intercourse' in different ways, each act may be prosecuted and punished as separate offense." See *State v. Lola Mae C.*, 185 W. Va. 452 (W. Va. 1991); See also *State v. Koon*, 90 W. Va. 632 (W. Va. 1993).

21. "A person is guilty of sexual assault in the second degree when [...] [s]uch person engaged in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion. W. Va. Code § 61-8B-4(a) [1991].

22. "Sexual intercourse means any act between persons involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the

sex organs of one person and the mouth or anus of [another person]. W. Va. Code § 61-8B-1(7) [1991].

23. Here, the Petitioner was charged with four counts of Sexual Assault in the Second Degree.

24. In interpreting W. Va. Code § 61-8B-1(7), the West Virginia Supreme Court of Appeals has held that the use of the word "or" in the definition of sexual intercourse "expresses the legislative intent that sexual intercourse can be committed in each of the various alternative ways, with each type of prohibited contact constituting a separate offense." State v. Carter, 168 W.Va. 90, 92 (W. Va. 1981).

25. The victim testified to three separate acts of sexual intercourse by penetration of the Petitioner's penis of the victim's vagina.

26. The victim testified to an additional act of sexual intercourse by the placement of the Petitioner's mouth upon her vagina.

27. These acts took place over a span of six hours in one night. There were three separate and distinct intervals between sexual assaults:

(1) After drinks, the Petitioner dragged the victim into his bedroom, where he sexually assaulted her. Vaginal penetration occurred.

(2) Afterwards, the Petitioner permitted the victim to use the bathroom, but he stood over her for fear that she would escape through the bathroom window. Upon exiting the bathroom, the Petitioner again attempted to force the victim to have sex with him, but he was unable to maintain an erection. He penetrated the victim's vagina with the head of his penis. This took place for approximately one hour.

(3) The victim was again allowed to use the bathroom. Afterwards, the same assault, with the same results, took place again.

Furthermore, during the time in which the Petitioner was unable to attain an erection, he placed his mouth over the victim's vagina.

28. Under *Miller*, although the victim was not moved a long distance, the Court concludes that she was detained for a sufficient amount of time to sustain the defendant's conviction for abduction.

29. During the period in which she was being assaulted, the victim was under the impression that there were no neighbors in close proximity to the Defendant's apartment.[5] She could not attempt escape because the Defendant blocked the only exit route and was constantly touching her.[6] Mr. Holmes got angrier if the victim dared to go near the door leading from the bedroom where she was being assaulted.[7] The victim thought that, if she even attempted escape, she would be slain.[8]

30. Based on the foregoing, the Court concludes that ample time had passed between sexual assaults to sustain the Petitioner's four convictions for Sexual Assault in the Second Degree and his one count of Abduction.

### Suppression of Helpful Evidence by the Prosecutor
### Losh *Checklist No. 16*

31. "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution" and the Fifth and Fourteenth Amendments to the United States Constitution. *State v.*

---

[5] Trial Transcript, page 48, 82
[6] See Id. page 75
[7] See Id. page 93
[8] See Id. page 93

*Hatfield*, Syl. Pt. 4, 169 W. Va. 191 (W. Va. 1982); <u>See Also</u> *Brady v. Maryland*, 373 U.S. 83 (1963).

32. "Rule 16(a)(1)(C) of the West Virginia Rules of Criminal Procedure limits a defendant's discovery of documents and tangible objects to those which are within the possession, custody, and control of the State." *State v. Murray*, Syl. Pt. 7, 1809 W. Va. 41 (W. Va. 1988).

33. The petitioner asserts that the prosecutor has wrongfully withheld a note that the victim left at the Petitioner's house.

34. However, the Petitioner has fallen woefully short of establishing that the letter was in the custody of the State.

35. Thus, the Petitioner has failed to satisfy the requirements of Rule 16(a)(1)(C) of the West Virginia Rules of Criminal Procedure and *State v. Murray*.

36. Furthermore, even if the Petitioner had proven that the letter in question was in the custody of the State, he has also failed to establish how that letter would have been helpful to his case.

37. The Petitioner's failure to establish how the letter would tend to exculpate the Petitioner by creating a reasonable doubt as to his guilt further defeats his constitutional arguments for a writ of habeas corpus under *State v. Hatfield* and *Brady v. Maryland.*

38. Based on the foregoing, the Court concludes that the Petitioner's claim of Suppression of Helpful Evidence by the Prosecutor must fail.

39. "Prosecutors have a duty to the court not to knowingly encourage or present false testimony." *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 379 (W. Va. 2009), citing *State v. Rivera,* 210 Ariz. 188, 109 P.3d 83, 89 (2005).

40. "When the State obtains a conviction through the use of evidence that its representatives know to be false, the conviction violates the Due Process Clause of the Fourteenth Amendment." *McBride* at 379, citing *State v. Wilkerson,* 363 N.C. 382, 683 S.E.2d 174, 187 (2009).

41. "[I]n order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that

   (1) the prosecutor presented false testimony,

   (2) the prosecutor knew or should have known the testimony was false, and

   (3) the false testimony had a material effect on the jury verdict." *McBride* 226 W. Va. at 379.

42. Regarding constructive knowledge, "[s]hould law enforcement officials involved with a criminal prosecution know that a witness for the State testified falsely, that knowledge is imputed to the prosecutor." Syl. pt. 1, in part, *State v. Youngblood,* 221 W.Va. 20 (W. Va. 2007), rev'd on other grounds.

43. Furthermore, the credibility of the witnesses in question is not a valid area of inquiry for the Court to make. As our State Supreme Court has articulated, [i]t was the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony. The jury made its determination, and this

Court will not second guess it simply because we may have assessed the credibility of the witnesses differently. See *McBride*, 226 W. Va. 375.

44. Concerning the instant case, the Petitioner's ground of State's Knowing Use of Perjured Testimony must fail because he did not meet any of the elements required in the *McBride* test.

45. First of all, as happened in *McBride*, the Petitioner has failed to produce any evidentiary material showing that the prosecutor presented false testimony. Although he has asserted that the State permitted perjured testimony of the victim in that her testimony differed from her ex-husband on the issue of domestic violence between them, the Petitioner has failed to establish that the victim committed the perjury.

46. Mere allegations are not enough to demonstrate the current claims. The Petitioner's purported evidence amounts to conclusory statements that the State used perjured testimony to obtain the conviction.

### Ineffective Assistance of Counsel
### Losh *Checklist No. 21*

47. "[T]he right to effective assistance of counsel is recognized not only for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648 (1984).

48. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-prong test established in *Strickland v. Washington*:[9]

    a) Counsel's performance was deficient under an objective standard of reasonableness; and

---

[9] *Strickland v. Washington*, 466 U.S. 68 (1984)

b) There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*State v. Miller*, Syl. Pt. 5, 194 W. Va. 3 (W. Va. 1995).

49. "In deciding ineffective assistance claims, a court need not address both prongs of the *Strickland/Miller* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321 (W. Va. 1995).

50. "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, West Virginia Penitentiary*, 207 W. Va. 11 (W. Va. 1999), citing *Legursky*, 195 W. Va. at 465.

51. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. *State v. Miller*, Syl. Pt. 5.

52. The first prong of the *Strickland/Miller* test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690.

53. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Miller*, 194 W. Va. at 15, quoting *Strickland*, 466 U.S. at 689.

54. "In other words, we always should presume strongly that counsel's performance was reasonable and adequate. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately." *Miller*, 194 W. Va. at 16 (emphasis in original).

55. Pursuant to Article III, sections 10 and 17 of the West Virginia Constitution, "[a]n indigent criminal defendant has a right to appeal his conviction." *Rhodes v. Leverette.* Syl. P.t 1, 160 W. Va. 781 (1977). Moreover, "[a]n indigent criminal defendant who desires to appeal his conviction has a right, under Article III, sections 10 and 17 of the West Virginia Constitution, to the effective assistance of court-appointed counsel on appeal." *Id.*, Syl. Pt. 2. "[I]nherent in the concept of the right to counsel is that counsel be effective, and within this concept is the requirement that appointed counsel support his client's appeal to the best of his ability." *Id.* at 785.

56. "Objective professional standards dictate that a criminal defense attorney, absent extenuating circumstances, must communicate. to the defendant any and all plea

bargain offers made by the prosecution. The failure of defense counsel to communicate any and all plea bargain proposals to the defendant constitutes ineffective assistance of counsel, absent extenuating circumstances." *Becton v. Hun*, Syl. Pt. 3, 205 W. Va. 139 (W. Va. 1999).

57. "In giving meaning to the requirement [of effective counsel], we must take its purpose – to ensure a fair trial – as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

58. "The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." *Legursky*, Syl. Pt. 3, 195 W. Va. 314.

59. Regarding the instant case, the Petitioner contends he received ineffective assistance of counsel because Mr. Perry Jones was culpable of the following:

   a) failing to conduct a reasonable investigation,

   b) failing to adequately cross-examine witnesses,

   c) failing to consult with the Petitioner and inform him of all reasonable alternatives, and

d) failing to informing the Petitioner of his right to remain silent.

60. However, the Court concludes that Mr. Jones provided the Petitioner with effective assistance of counsel.

61. Mr. Jones did not hire an investigator as requested by the Petitioner. However, an attorney is not necessarily compelled to hire an investigator when a defendant requests that he do so. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *State ex rel. Humphries v. McBride*, 220 W. Va. 362, 371 (W. Va. 2007), citing *Strickland* 466 U.S. at 691.

62. The complexity of the case is a factor in whether or not to hire an investigator. *Humphries*, 220 W. Va. at 371.

63. Applying a heavy measure of deference to Mr. Perry's judgment pursuant to *Humphries* and *Strickland*, the Court concludes that Mr. Perry was not ineffective in his investigations. Although he did not hire an investigator, he did his own investigation regarding the availability of additional video surveillance, and he reviewed the submitted discovery. He reviewed discovery with the Petitioner. He discussed the habitual offender consequences that the Petitioner might suffer if convicted. He further informed the Petitioner of the Petitioner's right to remain silent during trial, and, conversely, the fact that he may testify at trial if he so desired. The Court further concludes that Mr. Holmes was advised of his right not to testify by this Court and that if he chose to do so he would be subject to cross examination by

the State, to which the Petitioner noted his understanding. Afterwards, he determined that the issues in play ultimately came down to "he said / she said" and decided that they were ultimately issues for jury determination.

64. It is not for this Court to determine whether Mr. Perry was the *best* attorney. It is not for this Court to determine whether Mr. Perry was the *worst* attorney. Instead, pursuant to the *Strickland* standard, it is only important to determine if Mr. Perry acted as a reasonable attorney would act. He did.

65. Accordingly, the Court concludes that the Petitioner's claim of Ineffective Assistance of Counsel must fail.

### Excessiveness or Denial of Bail
### Losh *Checklist No. 24*

66. Amendment VIII of the Constitution of the United States and Article III, section 5 of the West Virginia Constitution provide that "[e]xcessive bail shall not be required[.]"

67. Article VIII, section 12 of the West Virginia Constitution provides that the legislature of this State may "designate the courts and officers or deputies thereof who have the power to admit persons to bail."

68. W. Va. Code § 62-1C-1 dictates that

> (a)    A person arrested for an offense not punishable by life imprisonment shall be admitted to bail by the court or magistrate. A person arrested for an offense punishable by life imprisonment may, in the direction of the court that will have jurisdiction to try the offense, be admitted to bail.

> (c)    The amount of bail or the discretionary denial of bail at any stage of the proceedings may be reviewed by summary petition first to the lower appellate court, if any, and thereafter by summary petition to the supreme court of appeals or any judge thereof.

69. At common law, bail was granted or denied in the exercise of a sound discretion, subject to established principles and precedents, and not as a matter of right. *State v. Bouchelle*, 134 W.Va. 34 (W. Va. 1949).

70. In contrast to confinement under Home Confinement Act, purpose of pretrial bail is not to punish, but rather to act as a security measure to ensure the appearance for a defendant to answer a specific criminal charge before any court or magistrate at a specific time or at any time to which case may be continued. W. Va. Code § 62-1C-2; *State v. Hughes*, 197 W.Va. 518 (W. Va. 1996).

71. "Where, before conviction, admitting the accused to bail rests with the discretion of the court, this discretion should be guided by two principles, namely:

   a) If released on bail, will the accused probably appear at the time and place required to stand trial; and

   b) If released on bail, does it appear probable that the accused will commit other crimes."

*State ex rel. Ghiz v. Johnson*, Syl. Pt. 1, 155 W. Va. 186 (W. Va. 1971).

72. When the Court exercises its discretion in admitting the accused to bail, "consideration should be given to all facts and circumstances of each case, and no absolute rule or policy should be adopted, nor should one circumstance be considered to the exclusion of all facts which should be considered." *Id.* at Syl. Pt. 2.

73. "A case-by-case determination of the right to and amount of bail in criminal proceedings is consistent with Bill of Rights provision that excessive bail shall not be required and with discretion vested in courts under provisions of statute concerning

right to bail. W. Va. Code, § 62-1C-1; *State ex rel. Hutzler v. Dostert*, 160 W. Va. 412 (W. Va. 1977).

74. Regarding the instant case, the Petitioner contends that bail was excessive.

75. However, as previously mentioned herein, the Petitioner was being charged with four counts of sexual assault and one count of abduction. All of these are crimes against the person, and all are serious.

76. Keeping in mind that a multitude of factors are to be considered when contemplating an amount for which bail can be set, the Court finds that the Petitioner has failed to demonstrate that his bail was excessive.

## Refusal to Subpoena Witnesses
## Losh *Checklist No. 34*

77. Regarding pertinent points of law regarding Counsel's obligation to conduct a reasonable investigation and, in turn, to subpoena witnesses, the Court makes again makes reference to the standards articulated by the Supreme Court of the United States of America in *Strickland v. Washington* and incorporated by the West Virginia Supreme Court of Appeals in *State v. Miller*. The Court reincorporates those points of law for the discussion of the Petitioner's accusation that his trial counsel wrongly refused to subpoena witnesses.

78. The Petitioner contends that he was denied his right to subpoena a witness for trial by Mr. Perry's decision not to subpoena the Petitioner's brother N        H        , D

J.        , and various Rite-Aid personnel.

79. The Petitioner further contends that these individuals would have been able to testify regarding the relationship between himself and the victim, presumably to bolster his spinal assertion that the sexual intercourse was consensual.

80. At the Omnibus hearing held herein, Mr. Jones testified that he reviewed the statements of Mr. Holmes and Mr. Jones and that he found none of the testimony therein to be helpful to the Petitioner's case.

81. Furthermore, the Court finds that the arguably exculpatory testimony that the Petitioner refers to was sufficiently presented during the State's case in chief from the victim herself.

82. Accordingly, Mr. Jones, acting as a reasonable attorney, did not wrongly refuse to subpoena witnesses at trial.

**Sufficiency of Evidence**
**Losh *Checklist No. 45***

83. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *State v. Guthrie*, Syl. Pt. 3, 194 W. Va. 657 (W. Va. 1995).

84. Furthermore, "[t]he evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court." *Id.* at Syl. Pt. 3.

85. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." See *Id.*

86. The analysis of the sufficiency of the evidence after a guilty verdict is not whether the jury could have viewed the facts differently or how a jury should interpret the evidence. Instead, it is whether, after review of all the evidence viewed in the light most favorable to the State, the jury could find guilt beyond a reasonable doubt. See *Id.*; See also *State v. Hutchinson*, 215 W. Va. 313 (W. Va. 2004).

87. The Petitioner contends that there was insufficient evidence presented at trial from which the jury could find him guilty beyond a reasonable doubt.

88. To review that claim, the Court will now examine the evidence as reflected in the trial transcript against the Petitioner from which the jury might have drawn to reach a verdict of guilty on all counts:

   a) In November 2007, the victim, E⸱ F⸱ ⸱, began working at a neighborhood drug store, and it was there that she met the Petitioner, who was shopping there.[10] The second time that the victim ever encountered the Petitioner while working at the drug store, he bought the victim hot dogs and flowers.[11]

   b) The victim advised the Petitioner that she did not wish to pursue a romantic relationship, and the gifts stopped.[12] While working at the drug store from November 2007 through May 2008, the victim saw the Petitioner approximately every other week when the Petitioner shopped at the drug store.[13]

---

[10] Trial Transcript, page 26
[11] See Id. page 29, 51-52
[12] See Id. page 29
[13] See Id. Page 51, 53

c) In May 2008, the victim was no longer employed at the local drug store, but she would occasionally encounter the Petitioner at the local Go-Mart store.[14] Between May 2008 and July 22, 2008, the victim saw the Petitioner approximately four times at the local Go-Mart store.[15] On one of these occasions at the Go-Mart, the Petitioner gave the victim his address and invited the victim to visit him at his home if she was ever so inclined.[16]

d) On July 22, 2008, the victim had a verbal argument with her ex-husband, J    F    , at the home that they shared with their minor child. As the argument escalated, Mr. F.    left the residence and called the police.[17] Following a conversation with the police, the victim also left the residence to allow her husband to return to the home and to allow her husband and her to cool off from the argument.[18]

e) Lacking anywhere else to go when she left her home, she decided to go to the Petitioner's residence.[19]

f) The victim testified that she arrived at Petitioner's home at approximately 7:30 p.m.[20] When the victim arrived, she found the Petitioner and his brother, N    H    .[21] Everyone drank vodka and orange juice, and Nathan Holmes eventually left the residence.[22] This left only the Petitioner and the victim.

---

[14] See Id. page 29, 53
[15] See Id. page 29, 53
[16] See Id. page 30
[17] See Id. page 31-32, 59-60
[18] See Id.
[19] See Id. page 32-33, 55-57, 59, 62
[20] See Id. page 33, 64
[21] See Id. page 33, 64
[22] See Id. page 33-34, 63-64

g) While at the Petitioner's house, the victim continually called her husband in an attempt to gain entry her home.[23] The victim even had the Petitioner drive her to her house at approximately 10:00 p.m. to 11:00 p.m. that evening in furtherance of the victim's efforts to get into her home.[24] When driving the victim home, the Petitioner stopped at the local Go-Mart store to buy beer. He also picked up two girls at the Go-Mart and gave them a ride. Finally, the Petitioner picked up his brother and his brother's friend, I      J     .[25]

h) Upon arriving at her residence, the victim tried to enter her home, but Mr. F.      , her ex-husband, would not permit her to enter the house.[26] The Petitioner, the Petitioner's brother, the brother's friend, and the victim returned to the Petitioner's residence and continued drinking beer.[27] After visiting for a period of time, the Petitioner's mood changed and he abruptly told his brother and the brother's friend that it was time for the brother and friend to leave.[28] The Petitioner's brother and friend left at approximately 3:30 to 3:45 a.m. on July 23, 2008.[29] The victim became immediately uncomfortable and decided to leave.[30]

i) When the victim tried to leave the Petitioner's residence, the victim testified that Petitioner pulled the victim by her hair away from the door, pulled the victim into his bedroom, and threw the victim onto his bed.[31] The victim

---

[23] See Id. page 66
[24] See Id. page 66-67
[25] See Id. page 33-34, 68, 69
[26] See Id. page 6-7, 67
[27] See Id. page 34, 69-70
[28] See Id. page 34
[29] See Id. page 44
[30] See Id. page 34-35, 36
[31] See Id. page 37

testified that she repeatedly pleaded with the Petitioner to just let her leave and she would not cause any problems for the Petitioner.[32] However, the Petitioner would not allow the victim to leave, drug the victim into the bedroom, stripped the victim of her clothing, and proceeded to sexually assault the victim by inserting his penis into her vagina.[33] The victim testified that while the Petitioner sexually assaulted her, the victim struggled to break free of the Petitioner and repeatedly begged the Petitioner to stop.[34] In response to the victim's struggle and pleas, the Petitioner told the victim to "shut the fuck up" and began choking the victim by placing both of his hands around the victim's neck and squeezing until the victim finally gave in to the Petitioner.[35] The Petitioner sexually assaulted the victim for approximately 20 minutes.[36]

j) After the Petitioner sexually assaulted the victim, the victim asked the Petitioner if she could go to the bathroom.[37] The victim testified that she asked the Petitioner if she could go to the bathroom because she had used the bathroom earlier in the evening and remembered that there was a window in the bathroom.[38] The victim testified that she intended to escape from the Petitioner by climbing, naked, out of the bathroom window.[39] Although the Petitioner did allow the victim to use the bathroom, the Petitioner followed the

---

[32] See Id. page 37
[33] See Id. page 37, 38-39
[34] See Id. page 38
[35] See Id. page 39
[36] See Id. page 74
[37] See Id. page 39
[38] See Id. page 39-40
[39] See Id. page 39-40

victim into the bathroom and hovered over the victim, thus foiling the victim's plan to escape from the Petitioner.[40]

k) After using the bathroom, the victim testified she again begged the Petitioner to let her go, but the Petitioner refused.[41] The victim testified that the Petitioner again pulled her back into the bedroom and again tried to sexually assault the victim by repeatedly attempting to force his penis into her vagina.[42] Although the Petitioner did penetrate the victim's vagina with his penis, the Petitioner was unable to obtain an erection.[43] The victim testified that the Petitioner tried to fully insert his flaccid penis into her vagina for approximately an hour.[44]

l) The victim testified that during this second assault, the victim again struggled, begged and screamed in an attempt to stop the Petitioner from sexually assaulting her.[45] The victim testified that in response, the Petitioner again choked the victim to the point the victim thought the Petitioner was not going to stop and Petitioner was going to kill her.[46] During this assault when the Petitioner was unable to obtain an erection, the victim testified that Petitioner also placed his mouth on her vagina.[47] After the vaginal and oral sexual assaults, the victim again asked to use the bathroom in an attempt to escape,

---

[40] See Id. page 39-40
[41] See Id. page 40
[42] See Id. page 40, 43
[43] See Id. page 40-41, 42-43
[44] See Id. page 43
[45] See Id. page 40, 41-42
[46] See Id. page 42
[47] See Id. page 40

but the Petitioner again accompanied the victim. The victim was unable to escape.[48]

m) The victim testified that after the second bathroom trip, the Petitioner again attempted to sexually assault the victim by forcing his penis into her vagina.[49] The victim testified that the Petitioner again failed to obtain an erection, but the Petitioner did penetrate her vagina again with the head of his penis.[50]

n) The victim testified that at around 8:00 a.m., approximately four hours into the assaults, the victim told the Petitioner that she had to be back at her house at 10:00 a.m. to get her daughter because her husband would be leaving for work.[51] In response, the Petitioner taunted the victim as to whether he would allow her to leave the Petitioner's residence.[52] Finally, just before 10:00 a.m., the Petitioner did allow the victim to get dressed and leave the apartment.[53] He finally unlocked the door so that she could leave.[54] However, the Petitioner followed on foot behind the victim as she walked home and followed the victim until she was approximately two blocks from her home.[55] The victim was too frightened to stop to get help before she was able to get to her own house.[56]

o) The victim testified that when she was able to get to her home, the victim immediately told her ex-husband that she had been sexually assaulted and the

---

[48] See Id. page 49
[49] See Id. page 49
[50] See Id. page 49-50
[51] See Id. page 43, 44
[52] See Id. page 43, 45
[53] See Id. page 44
[54] See Id. page 45
[55] See Id. page 45-46
[56] See Id. page 45

victim's ex-husband, Mr. F         promptly called 911.[57]   Mr. F:

testified at trial that when he saw the victim at their house at approximately

10:00 a.m., the victim had bruises around her neck and on her arms.  He

further testified that the victim had hair falling out of her head.[58]  .

p) Following receipt of the 911 call, Clarksburg City Police Sergeant Jason

Snider, a detective, responded to the home of the victim and her husband.[59]

Sergeant Snider testified at trial that upon arriving at the victim's home, he

saw the bruising around the neck and down the arms of the victim and the

victim was sobbing and shaking.[60]  Sergeant Snider further testified that that

he took pictures of the bruises.  The State introduced these pictures at trial.[61]

Sergeant Snider also testified that after interviewing the victim and obtaining

a search warrant for the Petitioner's home, the sergeant went to the home of

the Petitioner where he personally encountered the Petitioner.[62]  The sergeant

testified that upon the search warrant being read to the Petitioner, the

Petitioner spontaneously stated that the victim had been at his residence the

night before and left a note, but the Petitioner was not at his residence when

the victim had been there.[63]  Sergeant Snider also testified that, contrary to the

Petitioner's foregoing statement that the Petitioner later told police officers in

an oral, recorded statement that the Petitioner and the victim had an ongoing

relationship, the victim had been at his residence the night before, he and the

---

[57] See Id. page 4, 47
[58] See Id. page 4
[59] See Id. page 160
[60] See Id. page 160
[61] See Id. page 161, 109-110
[62] See Id. page 162, 164-165
[63] See page 165-166

victim had consensual sexual intercourse, and he walked the victim home, side by side, after the consensual relationship the previous evening.[64]

q) At trial, the State presented a video recording captured by a surveillance camera located on a building belonging to the Army Biometric Task Force.[65] The video recording showed the victim walking down the road toward her home at approximately 10:00 a.m. with the Petitioner following the victim - not walking sided by side with the victim.[66]

r) At trial, the State also presented the testimony of the Sexual Assault Nurse Examiner, Debra Montgomery.[67] Ms. Montgomery testified that that on July 23, 2008, while examining the victim, she saw the bruises on the neck, torso, and arms of the victim.[68]

s) The State also presented the testimony of Officer Chris Madia from the Clarksburg City Police Department.[69] Officer Madia testified that he saw the victim at her residence at approximately 6:30 p.m. on July 22, 2008, and saw the victim at the Go-Mart later in the evening on July 22, 2008 at approximately 9:30 p.m.[70] Officer Madia further testified that he did not see any marks or abrasions on the victim at either time he saw the victim on July 22, 2008.[71]

---

[64] See page 175, 176-177
[65] See page 94-100
[66] See State's Exhibit #12
[67] See Id. Page 100-126
[68] See Id. page 102, 106, 107
[69] See Id. page 126-132
[70] See Id. page 127, 128, 129, 131
[71] See Id. page 127-128, 129

t) The State further presented the testimony of Detective David Wygal and Officer Steve Menendez of the Clarksburg Police Department.[72] Detective Wygal and Officer Menendez both testified to being present at the Petitioner's home to execute a search warrant, and both testified to Petitioner's spontaneous initial statement to officers that the victim had stopped by his residence and left a note the previous night but that he was not home and had not seen the victim.[73]

u) Finally, the State presented the oral, recorded statement of the Petitioner taken on July 23, 2008, at the Clarksburg City Police Department.[74] Although the Petitioner was transported to the Clarksburg City Police Department by Sergeant Snider due to Petitioner's car being broke down, the Petitioner voluntarily accompanied Sergeant Snider to the police station.[75] At the police station and prior to the Petitioner's statement, Sergeant Snider advised the Petitioner that the Petitioner was not under arrest and was free to leave.[76] Detective Wygal then placed a digital recording device on the desk in front of the Petitioner.[77] The Petitioner then gave a statement admitting to the victim and him both being present at the apartment the previous evening and stating that the sexual intercourse was consensual.[78] Petitioner also stated that he walked the victim home the next morning.[79]

---

[72] See Id. page 132-138, 139-159
[73] See Id. page 134, 142
[74] See May 19, 2009 Pretrial Transcript See Id. page 5, 16-17; See Trail Transcript page 171, 180 ; State's Exhibit #15
[75] See May 19, 2009 Pretrial Transcript page 16-17; See Trial Transcript page 171
[76] See May 19, 2009 Pretrial Transcript page 17; See Trial Transcript page 172
[77] See May 19, 2009 Pretrial Transcript page 12; See Trial Transcript page 146-147
[78] See State's Exhibit #14
[79] See Id.

89. Based on the foregoing, the Court concludes that there is ample evidence on the record for the jury to find the Petitioner guilty beyond a reasonable doubt of all counts listed in the indictment, pursuant to *State v. Guthrie*.

### Waiver of other *Losh* Grounds

90. The hearing conducted in this matter was an Omnibus hearing. Therefore, the Petitioner has waived and is prevented from asserting any further grounds in a future Petition for Writ of Habeas corpus. The Court notes:

> An omnibus habeas corpus hearing as contemplated in W. Va. Code 53-4A-1 et seq. (1967) occurs when: (1) an applicant for habeas corpus is represented by counsel or appears pro se having knowingly and intelligently waived his right to counsel; (2) the trial court inquires into all the standard grounds for habeas corpus relief; (3) a knowing and intelligent waiver of those grounds is not asserted and is made by the applicant upon advice of counsel unless he knowingly and intelligently waived his right to counsel; and (4) the trial court drafts a comprehensive order including the findings on the merits of the issues addressed and a notation that the defendant was advised concerning his obligation to raise all grounds for post-conviction relief in one proceeding.

*Losh v. McKenzie*, Syl. Pt. 1, 166 W. Va. 762 (W. Va. 1981)

91. In applying the standard to the instant case, the Court notes that the Petitioner has been represented by Counsel throughout these proceedings.

92. The Court also finds that it appropriately cautioned the Petitioner at the outset of the hearing that any ground not raised during this hearing would be deemed waived.

93. The Court further concludes that the Petitioner's waiver of these grounds is implied because he chose not to present any further evidence and he chose not to proffer any evidence concerning these grounds for habeas relief.

94. Finally, the Court has ruled on the merits of the grounds presented at the hearing as well as in the "Petition for Writ of Habeas Corpus," the "Amended Petition for Writ

of Habeas Corpus," the "*Losh* Checklist of Grounds," and both sets of proposed findings of fact and conclusions of law.

## ORDER

For the reasons articulated herein, it is hereby **ORDERED** that the "Petition" and "Amended Petition for Writ of Habeas Corpus" are **DENIED**.

It is further **ORDERED** that the aforementioned petitions should be and are hereby dismissed from the active docket of this Court.

Finally, it is **ORDERED** that the Clerk of this Court shall deliver and/or otherwise provide certified copies of this Order to the following:

Susan P. Morris
Office of the Prosecuting Attorney
Third Floor, Courthouse, Suite 201
West Main Street
Clarksburg, WV 26301
*Counsel for the Respondent*

Donald Wayne Holmes (29014-5)
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185
*Petitioner*

Scott S. Radman
P.O. Box 543
Morgantown, WV 26507
*Counsel for the Petitioner*

Perry B. Jones
West & Jones
360 Washington Ave.
Clarksburg, WV 26301

ENTER: _February 14 2012_

_____
**THOMAS A. BEDELL**, Judge

Page 37 of 37

STATE OF WEST VIRGINIA
COUNTY OF HARRISON, TO-WIT:

I, Donald L. Kopp II, Clerk of the Fifteenth Judicial Circuit and the 18th

Family Court Circuit of Harrison County, West Virginia, hereby certify the

foregoing to be a true copy of the ORDER entered in the above styled action

on the _14_ day of _February_ ,2012.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix

Seal of the Court this _14_ day of _February_ ,2012.

_Donald L. Kopp II_
Fifteenth Judicial Circuit & 18th Family Court
Circuit Clerk
Harrison County, West Virginia